UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARHSALL MOREHOUSE,

                Plaintiff,

v.                                                5:17-CV-0705
                                                   (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                               OF COUNSEL:

OLINSKY LAW GROUP                  HOWARD OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        LORIE LUPKIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

Currently before the Court, in this Social Security action filed by Marshall Morehouse ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 14, 15.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1975. (T. 61.)[1] She completed high school. (T. 182.) Generally, Plaintiff's alleged disability consists of mental impairments. (T. 181.) Her alleged disability onset date is May 28, 1991. (T. 61.)

### B.  Procedural History

On May 2, 2014, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 61.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 23, 2016, the ALJ, Elizabeth Koennecke held a hearing. (T. 35-40.) Plaintiff failed to appear and ALJ Koennecke issued an order to show cause. (T. 129-131.) ALJ Koennecke concluded good cause was not found for Plaintiff's failure to appear. (T. 19.) On September 19, 2016, ALJ Koennecke held a supplemental hearing to obtain vocational expert testimony. (T. 41-50.) On September 28, 2016, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-34.) On April 26, 2017 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.  The ALJ's Decision

---

[1]   Plaintiff is a biological male, but identifies as female and therefore will be referred to as such.

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 22-29.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 3, 2014. (T. 22.) Second, the ALJ found that Plaintiff had the severe impairment of a mental impairment. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional mental limitations. (T. 24.) The ALJ determined Plaintiff could understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and handle simple repetitive work-related stress in that she could make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require her to supervise or manage the work of others. (*Id.*) The ALJ determined Plaintiff should avoid work requiring more complex interaction or joint effort to achieve work goals and Plaintiff could tolerate superficial contact with the public. (*Id.*) Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 27-28.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ's RFC determination is not supported by substantial

evidence because she failed to follow the treating physician rule and the RFC is based upon the vague opinion of the consultative examiner.  (Dkt. No. 14 at 13-19 [Pl.'s Mem. of Law].)

### B.	Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the ALJ properly weighed the medical opinion evidence and the RFC finding is supported by substantial evidence.  (Dkt. No. 15 at 5-10 [Def.'s Mem. of Law].)

## III.	RELEVANT LEGAL STANDARD

### A.	Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  See 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  See *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual

functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1)[2].  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* at §§ 416.927(d), 416.945(a)(3), 416.946(c).

Plaintiff argues the ALJ erred in discounting the opinion of her treating physician, Jason Stepkovitch, M.D. with Cortland County Mental Health Clinic ("CCMHC").  (Dkt. No. 14 at 13-19 [Pl.'s Mem. of Law].)[3]  Plaintiff initially received mental health care from various providers at Family Counseling Services of Cortland County, Inc. ("FCSCC").  In early 2016 Plaintiff was discharged from FCSCC because the providers determined she required a "higher level of care," Plaintiff did not "understand[] appropriate use of leaving [provider] voicemails between sessions, and [Plaintiff] identifying a complaint with the agency and pervious counselor," and Plaintiff's "escalating symptoms."  (T. 622.)  Notations indicate Plaintiff began mental health treatment with CCMHC in late January of 2016.  (T. 649.)

---

[2]     Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

[3]     In her decision the ALJ refers to Dr. Stepkovitch as Dr. Staplewich, M.D.  (T. 27.) However, it is clear from the ALJ's decision she is referring to Dr. Stepkovitch.

On May 5, 2016, Dr. Stepkovitch completed a medical source statement form. (T. 642-645.) Dr. Stepkovitch listed Plaintiff's diagnosis as bipolar disorder NOS and dissociative identity disorder. (T. 642.) Regarding functional limitations, the doctor indicated Plaintiff had "no useful ability to function" in her ability to: remember work-like procedure; maintain attention for two hour segment; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. (T. 643.) Dr. Stepkovitch indicated Plaintiff was "unable to meet competitive standards" in her ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; interact appropriately with the general public; and travel in unfamiliar places. (*Id.*) The doctor opined Plaintiff was "seriously limited, but not preclude" in her ability to: understand and remember very short and simple instructions and maintain socially appropriate behavior. (*Id.*) The doctor opined Plaintiff was "limited but satisfactory" in her ability to: carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; adhere to basic standards of neatness and cleanliness; and use public transportation. (*Id.*) Dr. Stepkovitch wrote, "[Plaintiff] has severe mood and dissociative symptoms which result in significant anxiety, deficits in

7

concentration/attention, paranoid ideation, and myriad other symptoms which preclude [her] capacity to vocationally function." (*Id.*)

When asked if Plaintiff had repeated episodes of deterioration or decompensation in work or work-like settings which caused her to withdraw from the situation or experience exacerbation of signs and symptoms, Dr. Stepkovitch answered "yes." (T. 644.) When asked if Plaintiff had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, Dr. Stepkovitch answered, "yes." (*Id.*) When asked to choose the percentage of time during an 8 hour workday Plaintiff would be "off task," Dr. Stepkovitch checked the box "more than 20%." (*Id.*) And when asked if Plaintiff would have good days and bad days, the doctor answered "yes." (*Id.*) When asked to estimate how many days Plaintiff would likely be absent from work as a result of her impairments, Dr. Stepkovitch checked the box "more than four days per month." (*Id.*)

In addition to Dr. Stepkovitch's statement, the record contained an examination and medical source statement by consultative examiner, Jeanne Shapiro, Ph.D. and an opinion by non-examining State agency medical examiner, K. Lieber-Diaz, Ph.D. (T. 51-60, 560-564.) On July 14, 2014, Dr. Shapiro examined Plaintiff and noted she was appropriately dressed with good hygiene. (T. 562.) She observed her motor behavior to be normal and her eye contact appropriate. (*Id.*) Dr. Shapiro noted her thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking. (*Id.*) She observed Plaintiff's affect as congruent with her thoughts and speech. (*Id.*) Dr. Shapiro noted Plaintiff's mood was anxious,

tense and apprehensive. (T. 563.) She noted Plaintiff's memory skills were intact and her intellectual functioning was in the average range. (*Id.*)

In a medical source statement, Dr. Shapiro opined Plaintiff appeared to have no limitations in: understanding and following simple instructions and directions; performing simple tasks; performing complex tasks; and learning new tasks. (T. 563.) She opined Plaintiff had mild limitations in: maintaining attention and concentration for tasks; attending to a routine and maintaining a schedule; and making appropriate decisions. (*Id.*) Dr. Shapiro opined Plaintiff appeared to be mildly-moderately limited in his ability to consistently relate to and interact well with others. (*Id.*) She opined Plaintiff had moderate limitations regarding her ability to deal with stress. (*Id.*) Dr. Shapiro stated the results of her examination appeared to be consistent with psychiatric problems and "this may significantly interfere with [Plaintiff's] ability to function on a daily basis." (T. 564.)

On July 18, 2014, Dr. Lieber-Diaz reviewed the medical evidence in the record at that time, including Dr. Shapiro's examination and statement, and opined Plaintiff was capable of performing a job in a low contact setting. (T. 58.)

The record also contained numerous "Mental Health Statement of Employment" forms for Cortland County Department of Social Services completed by various providers with CCMHC. On May 22, 2013, Steven Korona, PMHNP stated Plaintiff was responding to treatment, but "significant limitations remained [at] present." (T. 255.) Mr. Korona noted Plaintiff was temporarily unable to work for three months. (*Id.*) On July 30, 2013, Mr. Korona stated Plaintiff prognosis was "improving [with] continued treatment and responding well." (T. 254.) He stated Plaintiff was temporarily unable to

work for three months. (*Id.*) On September 23, 2013, Andrea Holmes, LCSW indicated Plaintiff was temporarily unable to work for six months or more. (T. 253.) Ms. Holmes wrote Plaintiff was participating in an educational program and would subsequently pursue employment. (*Id.*) On February 19, 2014, Ms. Holmes indicated Plaintiff was temporarily unable to work for six months or more due to "significant symptoms" related to her mental health diagnosis. (T. 252.) She further wrote Plaintiff was impaired in her ability to follow through on work related responsibilities. (*Id.*) On July 22, 2016, Rebecca Jones, LCSW, indicated Plaintiff was temporarily unable to work for three months. (T. 694.)

In assessing the medical opinion evidence in the record, the ALJ afforded Dr. Shapiro's opinion "significant weight" reasoning it was based on a thorough examination, the doctor had "extensive program and professional expertise," and the limitations were consistent with the findings of her examination. (T. 26.) The ALJ afforded Dr. Lieber-Diaz's opinion "considerable weight" reasoning it was "rendered after a thorough review of the entire medical record" and supported by the "sum of the evidence" including Plaintiff's "high level" of activities of daily living. (*Id.*) The ALJ afforded the forms completed by providers at CCMHC "little weight" reasoning they were opinions reserved to the Commissioner and based on Plaintiff's subjective report of symptoms. (*Id.*) The ALJ afforded Dr. Stepkovitch's opinion "no weight." (T. 27.) The ALJ reasoned the opinion was rendered "just two months" after Plaintiff began treatment with him, Plaintiff stated she had "no rapport" with the doctor, the opinion was "inconsistent with the assessment of [Plaintiff's] treating social workers who are most familiar with her condition," and Plaintiff's representative "acknowledged that the

provisional diagnoses rendered by Dr. [Stepkovitch] demonstrate that his is not entirely familiar with [Plaintiff's] treatment or progress." (T. 27.)

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *See Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-130).

As an initial matter, it appears that the ALJ did not regard Dr. Stepkovitch as Plaintiff's treating provider. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902. The ALJ referred to Dr. Stepkovitch as a "new provider" and stressed he began treating Plaintiff "just two months" prior to providing his May 2016 opinion. (T. 27.) However, the record indicates CCMHC, where Dr. Stepkovitch practiced, screened Plaintiff on January 27, 2016. (T. 649.) Dr. Stepkovitch, and other providers at CCMHC, evaluated Plaintiff, diagnosed Plaintiff, prescribed and monitored medication, and provided ongoing treatment. Dr. Stepkovitch also completed a medical source statement at Plaintiff's request. Therefore, Dr. Stepkovitch qualified as a treating provider and his opinion should have been evaluated under 20 C.F.R. §416.927(c). Here, the ALJ failed to provide good reasons for affording no weight to Dr. Stepkovitch's opinion.

In addition, the ALJ misstates evidence in the record and relied on her misreading in weighing Dr. Stepkovitch's opinion. In rejecting Dr. Stepkovitch's opinion, the ALJ relied on Plaintiff's statement that she had "no rapport" with the doctor. (T. 27.) However, Plaintiff stated she had a "poor rapport" with her male psychiatrist. (T. 670.) The ALJ further misstated the record in her assertion that Plaintiff's counsel acknowledge a "provisional" diagnosis by the doctor which undermined the doctor's familiarity with Plaintiff's treatment. (T. 27.) First, Plaintiff's counsel did not "acknowledge" that a provisional diagnosis undermined Dr. Stepkovitch's opinion. At the supplemental hearing Plaintiff's counsel summarized treatment notations in which

various diagnosis were discussed and ruled out. (T. 44, 699.) However, counsel never alluded to the assertion the ALJ claims she made, essentially that a provisional diagnosis undermined the doctor's opinion.  Second, even if counsel did acknowledge a provisional diagnosis, and such diagnosis undermined the doctor's opinion, it is unclear how counsel's acknowledgment of such provides good reason for rejecting a treating source's opinion.  Further, as stated by Plaintiff, even if Dr. Stepkovitch's diagnoses were provisional, he diagnosed Plaintiff with bipolar disorder and dissociative disorder without any caveats at the time of his opinion and because he diagnosed Plaintiff at the time of his opinion any earlier provisional diagnoses are irrelevant. (Dkt. No. 14 at 18 [Pl.'s Mem. of Law], T. 642.)

      The ALJ's conclusory assertion that Dr. Stepkovitch's opinion was inconsistent with the assessments of her treating social workers also requires clarification.  The ALJ afforded little weight to the assessments completed by Plaintiff's social workers in which they opined Plaintiff was unable to work and yet the ALJ found these statements inconsistent with Dr. Stepkovitch's opinion.  Dr. Stepkovitch's opinion essentially precludes gainful employment, which is entirely consistent with the social workers' assessments that Plaintiff was unable to work.

      Defendant asserts the ALJ's RFC determination was supported by Dr. Shapiro's opinion, which the ALJ properly afforded great weight and by Dr. Lieber-Diaz's opinion. (Dkt. No. 15 at 6-10 [Def.'s Mem. of Law].)  To be sure, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  *See Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir.

2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016). Further, the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983).

However, this Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a "reasonable basis for doubt" as to whether correct legal principles were applied in assessing Dr. Stepkovitch's opinion and the ALJ fundamentally misstates evidence in the record; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009) (*citing Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987)). Remand is therefore required for a proper evaluation of Dr. Stepkovitch's opinion under the treating physician rule. Due to the errors in weighing Dr. Stepkovitch's opinion, the ALJ will also need to make new findings related to Plaintiff's RFC and what other work Plaintiff retains the ability to perform in the national economy.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:    May 18, 2018

William B. Mitchell Carter
U.S. Magistrate Judge